UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH PAGLIAROLI,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Civil Action No. 19-21505 (FLW)<br><br>MEMORANDUM AND ORDER |

This matter has been opened to the Court by a motion to dismiss brought by Defendants Rutgers, The State University of New Jersey ("Rutgers"), and University Correctional Health Care ("UCHC") (collectively, "Medical Defendants"), seeking dismissal of Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). ECF No. 41. For the reasons explained in this Memorandum and Order, the motion to dismiss the SAC is GRANTED IN PART and DENIED IN PART. Plaintiff's informal request for counsel, ECF No, 42, is denied without prejudice at this time, as he has not filed an application to proceed *in forma pauperis* (IFP application) to establish he is indigent and has not addressed the relevant factors for appointing pro bono counsel. *See Tabron v. Grace*, 6 F.3d 147, 158 (3d Cir. 1993).

I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

On or about May 20, 2019, Plaintiff filed a *pro se* Complaint in the Superior Court of New Jersey, Law Division, Mercer County, under docket number MER-L-983-19, against the New Jersey Department of Corrections ("NJDOC"), and the State of New Jersey (collectively the "State Defendants"), UCHC, Rutgers, and various medical personnel. On December 18, 2019,

attorneys for the Medical Defendants filed a Notice of Removal with the Clerk of the United States District Court for the District of New Jersey, with the consent of State Defendants. *See* ECF No. 1. The Court subsequently granted the State Defendants' motion to dismiss and dismissed with prejudice the claims against NJDOC and the State of New Jersey. *See* ECF No. 21.

The Medical Defendants, including Defendant Dr. Nwachukwu, also moved to dismiss Plaintiff's Complaint, and the Court granted the motion to dismiss the Complaint as to Rutgers and UCHC but denied the motion to dismiss as to Defendant Nwachukwu in connection with her alleged inadequate treatment of Plaintiff's left shoulder.[1] *See* ECF Nos. 23-24. The Court permitted Plaintiff to file an Amended Complaint against Defendants Rutgers and UCHC. *See id.*

On October 8, 2020, Plaintiff submitted his Amended Complaint. ECF No. 26. The Amended Complaint, however, focused solely on Defendants Rutgers and UCHC. *See id.* The Court granted the motion to dismiss as to Defendants Rutgers and UCHC for failure to state a claim for relief. *See* ECF No. 34. In light of Plaintiff's *pro se* status, the Court provided Plaintiff with leave to amend to submit a single all-inclusive Second Amended Complaint that

---

[1] According to the Original Complaint, Dr. Nwachukwu allegedly continued reducing Plaintiff's pain medication even though she was told that Plaintiff was in intense pain. When the pain became so severe that Plaintiff's arm locked and he could not lift it at all, Dr. Nwachukwu ordered an injection of Toradol, but this course of treatment could not be continued because the medication was contraindicated due to Plaintiff's renal disease. Plaintiff continued to have intense pain for months after the Toradol was stopped, and he asserts Dr. Nwachukwu canceled his appointment and refused to allow other providers to see him to "cover up" her decision to order the Toradol injection and other contraindicated medications despite Plaintiff's medical history of renal disease. The Court held that Plaintiff pleaded sufficient facts showing that Defendant Dr. Nwachukwu exhibited deliberate indifference to his serious medical condition by allegedly delaying treatment for nonmedical reasons, which resulted in undue suffering, and by allegedly persisting in an ineffective course of treatment.

included his allegations against Defendants Nwachukwu, Rutgers, UCHC, and the other unserved medical providers named in Plaintiff's original complaint. The Court also notified Plaintiff that he must serve the unserved medical providers.

Plaintiff submitted the SAC, which was docketed on July 8, 2021. ECF No. 35. In the SAC, Plaintiff realleges his claims against Dr. Nwachukwu and other individual medical providers, and also asserts claims pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978), against Rutgers and UCHC.

According to the SAC, Provider Camarillo ordered an x-ray of Plaintiff's left shoulder, and told Plaintiff that his pain was the result of arthritis and that he would need to learn to live with it. *See* Complaint at 6. Dr. Nwachukwu then reduced Plaintiff's pain medication despite Plaintiff's increasing pain. When Plaintiff told Dr. Nwachukwu she should increase or change his medication to something stronger, she told Plaintiff that the policy of the State to get all inmates off opioids due to the opioid crisis. *See id.* at 6-7. Plaintiff alleges that he suffered in pain for six months before he saw a specialist and had surgery on his shoulder. *See id.* at 7.

Plaintiff also alleges that Dr. Nwachukwu was notified that Plaintiff had renal disease but nevertheless prescribed medications that were contraindicated. *Id.* at 8. Dr. Nwachukwu ordered a shot of Toradol over the objections of Dr. Jackson, who stated that Plaintiff could not receive the shot "due to his kidneys." *Id.* at 8. Provider Brewin suggested that Plaintiff see a pain management specialist, and Provider Jackson was assigned as Plaintiff's pain management specialist.[2] *Id.* at 8-9.

---

[2] In his SAC, Plaintiff questions Provider Jackson's qualifications to be a pain management specialist, as Plaintiff's brother told him that she is not registered as a nurse or other medical professional. *See id.* at 9. Plaintiff also appears to allege that he has been unable to serve Provider Jackson even though she still works at NJSP. *See id.*

When Plaintiff attempted to get his next shot of Toradol from the medical department, the nurse at the window told him he was not on the list, and Nurse Pettorini told Plaintiff he had to leave the medical department, even though he was in severe pain and would have to wait until after the three-day weekend to receive his shot. *Id.* at 10. Plaintiff was shocked by Nurse Pettorini's demeanor, and he initially refused to leave the medical department due to his severe pain, but an unidentified corrections officer forced him to go back to his unit. *See id.*

Plaintiff obtained an emergency pass and went back to the medical department. Once he arrived, he heard Provider Jackson tell Nurse Pettorini that Plaintiff could not have Toradol, Mobic, or Motrin due to his kidney disease, and that Provider Jackson had advised Dr. Nwachukwu about Plaintiff's renal disease and did not want to be involved in medicating him. *See id.* Nurse Pettorini went into Dr. Nwachukwu's office and when she returned, she told Plaintiff that Dr. Nwachukwu did not want to see him and no other Providers would see him either. *id.* Although he was in excruciating pain, Plaintiff went back to his cell. *See id.*

Plaintiff subsequently obtained his medical records and learned that Dr. Nwachukwu was advised that Plaintiff needed an MRI every three months to monitor his kidneys, and Dr. Nwachukwu ignored this recommendation. *Id.* at 11-12. Plaintiff also alleges that Dr. Nwachukwu and Nurse Pettorini attempted to cover up the fact that Dr. Nwachukwu gave Plaintiff Toradol, Mobic, and Motrin, despite her knowledge that Plaintiff had renal disease. Plaintiff further alleges that Dr. Nwachukwu also failed to give Plaintiff different pain medications simply because those medications are narcotics.[3] *Id.* at 13. Plaintiff also alleges

---

[3] Plaintiff also alleges that Provider Collier mistreated him and refused to provide a pass to Plaintiff to prevent guards from asking Plaintiff to raise his arms when frisking him. *See id.* at 12. According to Plaintiff, Provider Collier was also aware of Plaintiff's renal disease. *See id.*

4

that Defendants could have sent him to the hospital when he complained of his shoulder pain and instead delayed the surgery for six months in order to save money. *See id.* at 13-14.

With respect to the Moving Defendants, Plaintiff alleges that "Rutgers and/or UCHC [have] a standard policy, practice and custom of violating the constitutionally protected rights of patients" and "are engaged in a continual RICO pattern of similar pas[t] conduct of denying patients adequate, effective and meaningful medical care and treatment." *Id.* ¶¶ 19-20. He further pleads that "they have engaged in the same medical treatment to" two other individuals, Angel Medina and Edelbarto Padilla, and he references a Superior Court action. *Id.* ¶ 21. In addition, Plaintiff alleges that "[t]he policy, practice and custom was to cut and reduce medical care and treatment to keep the costs down, in order to generate higher profit." *Id.* Plaintiff alleges more generally that "Rutgers and/or UCHC have a history of providing inadequate care to inmates incarcerated in the New Jersey Department of Corrections," "have been deliberately indifferent to the serious medical needs of inmates housed within the New Jersey Department of Corrections," and "have implemented a policy, practice and custom preventing Plaintiff from obtaining adequate medical care." *Id.* ¶¶ 23-25. Finally, Plaintiff alleges that Rutgers and/or UCHC have been deliberately indifferent to his serious medical needs, causing him pain and suffering. *Id.* ¶¶ 26-27.

Rutgers and UCHC have moved to dismiss the SAC for failure to state a claim for relief. *See* ECF No. 41. Plaintiff submitted an opposition brief and also requests that the Court assign pro bono counsel in this matter because he is overwhelmed and not trained in the law. *See* ECF No. 42.

## II.   STANDARD OF REVIEW

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   ANALYSIS

The Medical Defendants argue that the SAC once again fails to state a claim for relief against Rutgers and UCHC. The Court disagrees in part. As the Court explained in its prior Opinions, entities like Rutgers and UCHC, which provide healthcare services for the state pursuant to a contract, "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to state a claim for relief, Plaintiff must provide facts showing that

Rutgers and/or UCHC had a relevant policy or custom, and that the policy or custom caused the constitutional violation he alleges. *See id.* (considering standard of proof at summary judgment) (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

To proceed on a *Monell* theory, a plaintiff must identify a specific policy or custom of the entity that caused the constitutional violation at issue and must typically allege a pattern of similar past conduct to show that the entity was on notice that the policy or custom caused the alleged violation. *See, e.g.*, *Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F. App'x. 759, 760 (3d Cir. 2021) (affirming dismissal of *Monell* claim where Plaintiff did not sufficiently allege that County hospital had a history of providing inadequate care to nursing home residents after they fall or was otherwise indifferent to their post-fall medical needs and failed to allege a pattern of prior incidents evidencing deliberate indifference).

Plaintiff alleges that Rutgers and UCHC have 1) a general policy or custom of providing inadequate medical care and treatment to inmates and 2) a specific policy or custom of cutting necessary medical care and treatment to keep the costs down, in order to generate higher profits. Plaintiff must do more than restate the elements of a *Monell* policy claim, and such conclusory allegations are "not entitled to the assumption of truth" and are insufficient to take its claim "from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). Plaintiff's threadbare allegations that Moving Defendants have a generalized policy or custom of providing inadequate medical care to inmates fails under this standard.

However, the denial of medical care based on a non-medical factor, such as cost, may violate the Eighth Amendment. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011); *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). A

7

"naked assertion" that defendants considered cost in making a medical decision is insufficient to state a claim for a violation of the Eighth Amendment, "as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674 (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Thus, a conclusory statement that a corporation had a policy of cutting costs is insufficient to state a claim for liability under the Eighth Amendment. *Id.*

Plaintiff, however, does more than merely allege that Rutgers and UCHC have a policy or custom of reducing medical care and treatment to keep costs down and maximize profits; he also alleges that his shoulder surgery was delayed for six months to reduce costs, and he mentions two specific prisoners who allegedly experienced the same treatment. The Medical Defendants assert that Plaintiff fails to allege sufficient facts about the prior violations. Here, at this early stage and in light of Plaintiff's pro se status, the Court infers that Angel Medina and Edelbarto Padilla were similarly denied necessary medical treatment by Rutgers and/or UCHC in order to cut costs and/or maximize profits. As such, the Court finds that Plaintiff sufficiently alleges a policy or custom and a pattern of past violations with respect to his *Monell* claim that Defendants have a policy or custom of delaying necessary surgery as a cost-cutting measure.[4]

---

[4] To be clear, the only viable *Monell* claim in the SAC relates to the denial or delay of Plaintiff's surgery to reduce costs and maximize profits. The Court notes that there are other alleged instances of deliberate indifference by individual Defendants in the SAC, as the individual Defendants also allegedly reduced Plaintiff's pain medication despite his increasing pain, refused to treat his left shoulder pain, and also prescribed him medication that damaged his kidneys despite their knowledge that he had renal disease. Admittedly, it is not entirely clear which of these alleged violations were the subject of the Superior Court case. Moreover, the Court notes that Plaintiff states in his SAC that Dr. Nwachukwu refused to prescribe narcotics pursuant to the State's policy against prescribing opioids. Plaintiff does not attribute this policy to Rutgers or UCHC, and the Court does not infer a separate *Monell* claim that Rutgers or UCHC had a policy of denying narcotics due to the opioid epidemic.

For these reasons, Court grants the motion to dismiss as to Rutgers and UCHC with respect to Plaintiff's generalized claims that the Moving Defendants have a policy or custom of providing inadequate medical care to inmates, but denies the motion to dismiss as to Plaintiff's *Monell* claim that Moving Defendants have a specific policy of denying and/or delaying necessary surgery to cut costs and maximize profit.

Finally, the Court denies without prejudice Plaintiff's informal request for pro bono counsel. Plaintiff has not established that he is indigent or received *in forma pauperis* status in this matter, which was removed from the Superior Court of New Jersey. Moreover, Plaintiff has not addressed the factors for appointing pro bono counsel in a civil action, as outlined in *Tabron v. Grace*, 6 F.3d 147, 158 (3d Cir. 1993).[5] As such, pro bono counsel is denied without prejudice. In light of Plaintiff's requests for pro bono counsel, the Court will direct the Clerk of the Court to send Plaintiff an application to proceed *in forma pauperis* ("IFP application") for prisoners. If Plaintiff wishes to renew his request for pro bono counsel, he must submit a complete IFP application, including a certified six-month account statement. If the Court grants Plaintiff's IFP application, it will screen the remaining claims and Defendants for dismissal pursuant to 28 U.S.C. § 19159(e)(2)(B), and direct the Clerk of the Court to send Plaintiff an

---

[5] The "critical threshold determination" for appointing counsel is whether the case "has arguable merit in fact and law." *See Tabron*, 6 F.3d at 158. In deciding whether to appoint counsel the Court also considers the following factors: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the applicant's claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. *Tabron*, 6 F.3d at 155-157. If Plaintiff received IFP status and files a motion for pro bono counsel, he should address whether these factors support appointing counsel in this matter.

application for pro bono counsel and the Marshal forms for serving any additional Defendants that remain after the Court's screening opinion.

**IT, IS THEREFORE**, on this 15th day of March 2022,

**ORDERED** that the Clerk of the Court shall mark this matter as OPEN; and it is further

**ORDERED** that the Rutgers and UCHC's motion to dismiss the Second Amended Complaint, ECF No. 41, is GRANTED in part and DENIED in part as explained in this Memorandum and Order; and it is further

**ORDERED** that Plaintiff's informal request for pro bono counsel, ECF No. 42, is DENIED WITHOUT PREJUDICE; and it is further

**ORDERED** that the Clerk of the Court shall send Plaintiff the application to proceed *in forma pauperis* for prisoners ("IFP application"), and it is further

**ORDERED** that if Plaintiff wishes to renew his request for counsel, he must file a complete application to proceed IFP application, including a certified account statement for the last six months, within 30 days of the date of this Memorandum and Order; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file.

/s/ Freda L. Wolfson
Freda L. Wolfson,
U.S. Chief District Judge