**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH PAGLIAROLI, | : |
| Plaintiff, | : Civ. No. 19-21505 (GC) (RLS) |
| v. | : |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | : **OPINION** |
| Defendants. | : |

**CASTNER, District Judge**

### I. INTRODUCTION

Plaintiff, Kenneth Pagliaroli ("Plaintiff" or "Pagliaroli") is a state prisoner incarcerated at the New Jersey State Prison ("NJSP") is Trenton, New Jersey. He is proceeding *pro se* with a Second Amended Complaint ("SAC") filed pursuant to 42 U.S.C. § 1983. (*See* ECF 35). Presently pending before this Court is Plaintiff's Motion for the appointment of *pro bono* counsel. (*See* ECF 62). That Motion will be denied without prejudice.

Furthermore, this Court will screen Plaintiff's claims against Defendants named in his SAC pursuant to 42 U.S.C. § 1915A who have not yet appeared[1]; namely: (1) Ms. Jackson; (2) Joy Camarllio; (3) Terrance Collier; (4) Lindsay Pettorini[2]; and (5) John & Jane Doe(s). For the following reasons, Plaintiff's SAC shall be permitted to proceed against Defendants Pettorini and

---

[1] Given the Court previously ruled on Rutgers and the University Correctional Healthcare's Motion to Dismiss and that Defendant Nwachucwu has answered the SAC, those Defendants shall remain in this case.

[2] Plaintiff names both Nurse Petterni and a Lindsay Pettorini as Defendants. However, the only person resembling either name in the facts giving rise to Plaintiff's SAC is Lindsay Pettorini. Therefore, this Court presumes this is the name of the Defendant Plaintiff wishes to sue.

Jackson, but will be dismissed without prejudice against Defendants Camarllio, Collier and John Doe(s) for failure to state a claim upon which relief may be granted.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint in state court. On December 18, 2019, Defendants Rutgers and University Correctional Healthcare ("UCH") removed Plaintiff's initial Complaint to this Court. On February 19, 2020, Defendants Rutgers, UCH and Dr. Nwachucwu filed a Motion to Dismiss the initial Complaint. (*See* ECF 13). On September 18, 2020, the Court dismissed Plaintiff's claims against Rutgers and UCH without prejudice, but denied dismissal of Plaintiff's initial complaint against Nwachucwu. (*See* ECF 23 & 24).

Ultimately, Plaintiff submitted a SAC (ECF 35), which is the operative pleading in this case. Prior to this matter being reassigned to the undersigned, the Honorable Chief Judge Freda L. Wolfson laid out the factual allegations contained within Plaintiff's SAC as follows:

> Provider Camarillo ordered an x-ray of Plaintiff's left shoulder, and told Plaintiff that his pain was the result of arthritis and that he would need to learn to live with it. *See* Complaint at 6. Dr. Nwachukwu then reduced Plaintiff's pain medication despite Plaintiff's increasing pain. When Plaintiff told Dr. Nwachukwu she should increase or change his medication to something stronger, she told Plaintiff that the policy of the State to get all inmates off opioids due to the opioid crisis. *See id.* at 6-7. Plaintiff alleges that he suffered in pain for six months before he saw a specialist and had surgery on his shoulder. *See id.* at 7.
>
> Plaintiff also alleges that Dr. Nwachukwu was notified that Plaintiff had renal disease but nevertheless prescribed medications that were contraindicated. *Id.* at 8. Dr. Nwachukwu ordered a shot of Toradol over the objections of Dr. Jackson, who stated that Plaintiff could not receive the shot "due to his kidneys." *Id.* at 8. Provider Brewin suggested that Plaintiff see a pain management specialist, and Provider Jackson was assigned as Plaintiff's pain management specialist. [FN 2] *Id.* at 8-9.
>
>> [FN 2] In his SAC, Plaintiff questions Provider Jackson's qualifications to be a pain management

2

specialist, as Plaintiff's brother told him that she is not registered as a nurse or other medical professional. *See id.* at 9. Plaintiff also appears to allege that he has been unable to serve Provider Jackson even though she still works at NJSP. *See id.*

When Plaintiff attempted to get his next shot of Toradol from the medical department, the nurse at the window told him he was not on the list, and Nurse Pettorini told Plaintiff he had to leave the medical department, even though he was in severe pain and would have to wait until after the three-day weekend to receive his shot. *Id.* at 10. Plaintiff was shocked by Nurse Pettorini's demeanor, and he initially refused to leave the medical department due to his severe pain, but an unidentified corrections officer forced him to go back to his unit. *See id.*

Plaintiff obtained an emergency pass and went back to the medical department. Once he arrived, he heard Provider Jackson tell Nurse Pettorini that Plaintiff could not have Toradol, Mobic, or Motrin due to his kidney disease, and that Provider Jackson had advised Dr. Nwachukwu about Plaintiff's renal disease and did not want to be involved in medicating him. *See id.* Nurse Pettorini went into Dr. Nwachukwu's office and when she returned, she told Plaintiff that Dr. Nwachukwu did not want to see him and no other Providers would see him either. [*I*]*d.* Although he was in excruciating pain, Plaintiff went back to his cell. *See id.*

Plaintiff subsequently obtained his medical records and learned that Dr. Nwachukwu was advised that Plaintiff needed an MRI every three months to monitor his kidneys, and Dr. Nwachukwu ignored this recommendation. *Id.* at 11-12. Plaintiff also alleges that Dr. Nwachukwu and Nurse Pettorini attempted to cover up the fact that Dr. Nwachukwu gave Plaintiff Toradol, Mobic, and Motrin, despite her knowledge that Plaintiff had renal disease. Plaintiff further alleges that Dr. Nwachukwu also failed to give Plaintiff different pain medications simply because those medications are narcotics. [FN 3] *Id.* at 13. Plaintiff also alleges that Defendants could have sent him to the hospital when he complained of his shoulder pain and instead delayed the surgery for six months in order to save money. *See id.* at 13-14.

> [FN 3] Plaintiff also alleges that Provider Collier mistreated him and refused to provide a pass to Plaintiff to prevent guards from asking Plaintiff to raise his arms when frisking him. *See id.* at 12.

3

> According to Plaintiff, Provider Collier was also aware of Plaintiff's renal disease. *See id.*

*Pagliaroli v. New Jersey Dep't of Corr.*, No. 19-21505, 2022 WL 788853, at *2–3 (D.N.J. Mar. 15, 2022).

After Plaintiff filed his SAC, Defendant Nwachukwu filed an Answer. (*See* ECF 40). Defendants Rutgers and UCH also separately filed a Motion to Dismiss. (*See* ECF 41). On March 15, 2022, the Court denied Rutgers and UCH's Motion to Dismiss. (*See* ECF 44). The Court also denied without prejudice Plaintiff's informal request for the appointment of *pro bono* counsel as Plaintiff failed to establish that he was indigent. (*See* ECF 44 at 9-10). The Court noted that it would screen the remainder of Plaintiff's SAC against the other Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) *if* Plaintiff received *in forma pauperis* status. (*See* ECF 44 at 9-10).

On April 26, 2022, Plaintiff filed a motion for the appointment of *pro bono* counsel and applied for *in forma pauperis* status. (*See* ECF 50). On April 29, 2022, the Court denied without prejudice Plaintiff's application to proceed *in forma pauperis* because it lacked the required *certified* six-month prisoner account statement. (*See* ECF 51). The Court further administratively terminated Plaintiff's motion for the appointment of *pro bono* counsel because Plaintiff had not yet shown he was indigent. (*See id.*). Chief Judge Wolfson then reassigned this matter to the undersigned. (*See* ECF 52).

On June 1, 2022, this Court received an *uncertified* prisoner account statement from Plaintiff. (*See* ECF 53). Thereafter, on November 2, 2022, Plaintiff filed a motion to appoint *pro bono* counsel. (*See* 62).

4

## III.   DISCUSSION

### A. *In forma pauperis* request and Motion for the appointment of *pro bono* counsel

This Court construes Plaintiff's submission of an uncertified prisoner account statement as his attempt to again seek *in forma pauperis* status. A prisoner-plaintiff seeking *in forma pauperis* status must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the applicable filing fee. *See* 28 U.S.C. § 1915(a)(1). The prisoner-plaintiff must also submit a *certified* copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. *See id.* § 1915(a)(2). The prisoner must obtain this statement from the appropriate official of each prison at which he was or is confined. *See id.*; *see also* L. Civ. R. 81.2(b) ("Whenever a Federal, State, or local prisoner submits a civil rights complaint . . . the prisoner shall also submit an affidavit setting forth information which establishes that the prisoner is unable to pay the fees and costs of the proceedings and shall further submit a certification signed by an authorized officer of the institution certifying (1) the amount presently on deposit in the prisoner's prison account and, (2) the greatest amount on deposit in the prisoner's prison account during the six-month period prior to the date of the certification.").

In this case, while Plaintiff has now included a prisoner account statement, it has not been *certified* by any appropriate prison official. Thus, to the extent Plaintiff is seeking *in forma pauperis* status through filing this prisoner account statement, such a request is denied without prejudice as incomplete.

Plaintiff has also filed a motion for the appointment of *pro bono* counsel. (*See* ECF 62). A district court may appoint counsel to represent an indigent civil litigant under 28 U.S.C. § 1915(d), although such litigants do not have a right to appointed counsel. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). For similar reasons as previously announced by the Court, Plaintiff's

motion for the appointment of *pro bono* counsel will be denied without prejudice given that Plaintiff has not yet shown that he is entitled to *in forma pauperis* status.

B. <u>Screening Plaintiff's claims against Defendants who have not yet been served or have not appeared</u>

In prior orders, the Court noted it would screen the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B) *if* Plaintiff was able to obtain *in forma pauperis* status. However, upon further review, given that Plaintiff is a prisoner, this Court need not reserve screening as this Court may screen the remainder of the SAC pursuant to 28 U.S.C. § 1915A at this time.

Courts must screen complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). Section 1915A(b) directs district courts to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b). Furthermore, the fact that some Defendants have now filed an answer and/or a dispositive motion in response to the SAC does not preclude this Court from screening the remainder of the SAC pursuant to 28 U.S.C. § 1915A. *See Lair v. Purdy*, 84 F. App'x 413, 414 (5th Cir. 2003) (per curiam) (rejecting federal prisoner's argument that district court erred in using § 1915A to dismiss some of his claims after the defendants had already answered); *Rivera v. Zwiegle*, No. 13-3024, 2014 WL 6991954, at *1 n.1 (D.N.J. Dec. 9, 2014) (noting that the fact that defendants have filed an answer or dispositive motions does not prevent a court from screening under § 1915A); *Loving v. Lea,* No. 13–158, 2013 WL 3293655, at *1 (M.D. La. June 28, 2013) (citations omitted) ("A § 1915A dismissal may be made at any time, before or after service of process and before or after an answer is filed.").

6

"[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Under *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The SAC must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n. 17 (3d Cir.2012) (quoting *Iqbal*, 556 U.S. at 678).

As Plaintiff's SAC makes clear, he is attempting to sue Defendants under the Eighth Amendment for their purported deliberate indifference to his serious medical needs.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting

7

> *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir, 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir, 1987))).

i. *Pettorini*

This Court will permit Plaintiff's SAC to proceed against Pettorini. By way of example only, despite purportedly being aware that Plaintiff was in extreme pain, at one point, Pettorini told Plaintiff he would have to wait at least three days in which to receive a shot to relieve the pain. Under such circumstances, at the screening stage, this Court finds such allegations enough to proceed Plaintiff's SAC against Pettorini.

As noted above, Plaintiff has not yet received *in forma pauperis* status. Thus, it would be inappropriate at this time for this Court to order the United States Marshals' Service to serve a summons and the SAC on Pettorini under 28 U.S.C. § 1915. Accordingly, the Clerk will be ordered to issue summons against Defendant Pettorini and send it to Plaintiff along with a copy of

8

his SAC so that Plaintiff may attempt to effectuate service himself in some fashion on Defendant Pettorini.[3]

ii. *Jackson*

This Court will also permit Plaintiff's SAC to proceed against Jackson. By way of example only, Plaintiff indicates at one point he overheard Jackson tell Pettorini that she would refuse to treat Plaintiff because of her prior disagreements with how Nwachucwu was treating Plaintiff. Thus, Jackson was purportedly aware of Plaintiff's need for care, but intentionally refused to provide care. At this screening stage, this Court will err on the side of caution and will also permit Plaintiff's SAC to proceed against Jackson.[4] *See Lanzaro*, 834 F.2d at 346 (deliberate indifference may be shown where prison official has actual knowledge of need for treatment but intentionally refuses to provide care).

iii. *Camarllio*

Plaintiff fails to state an Eighth Amendment claim against Camarllio. Plaintiff's claims against her merely state a purported misdiagnosis after she ordered an X-ray on Plaintiff's shoulder and/or relate to Plaintiff's complaints regarding how Camarllio treated Plaintiff. Such allegations are insufficient to state a deliberate indifference claim. *See, e.g., Turner v. Springler*, No. 20-13184, 2022 WL 17144991, at *4 (D.N.J. Nov. 22, 2022) (citing *Stewart v. Pennsylvania Dep't of Corr.*, 677 F. App'x 816, 820 (3d Cir. 2017) (noting initial misdiagnosis of an injury does not rise

---

[3] Should Plaintiff seek *in forma pauperis* status within thirty (30) days and ultimately receive *in forma pauperis* status, this Court will order the U.S. Marshals to effectuate service rather than Plaintiff. However, until such time as Plaintiff receives *in forma pauperis* status, it shall be his responsibility to effectuate service.

[4] Like Pettorini, the Clerk will be ordered to provide Plaintiff a summons against Pettorini so that Plaintiff can effectuate service himself.

9

to the level of deliberate indifference). Accordingly, Plaintiff's SAC against Camarllio is dismissed without prejudice for failure to state a claim upon which relief may be granted.

    iv.    *Collier*

Plaintiff also fails to state a deliberate indifference claim against Collier. Plaintiff complains that Collier did not provide him with a pass that would have put officers on notice to not make Plaintiff raise his arm in the event they might need to due to his injuries. Such allegations in and of themselves do not show Collier's deliberate indifference, but rather, amount to a difference of opinion regarding how Plaintiff wished to be treated by Collier at the time. *See, e.g., Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014) ("No claim of deliberate indifference is made out where a significant level of care has been provided, and all that is shown is that the prisoner disagrees with the professional judgment of a physician[.]"). Plaintiff's SAC also alludes to Collier's purported knowledge of Plaintiff's renal disease. However, Plaintiff fails to allege relevant facts as it relates to Collier being deliberately indifferent to Plaintiff's serious medical needs because he purportedly knew about Plaintiff's purported kidney issues. As alleged, such sparse facts as it relates to "kidney issues" and Collier fail to state with any facial plausibility an Eighth Amendment deliberate indifference claim against Collier.

    v.    *John Doe(s)*

Finally, Plaintiff's mentions a John Doe in his factual allegations as the correctional officer who purportedly took Plaintiff back to his cell after an altercation Plaintiff had with Pettorini. As the United States Court of Appeals for the Third Circuit has noted:

> non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official

10

> . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

*Pressley v. Miller*, No. 21-2826, 2022 WL 17414866, at *3 (3d Cir. Dec. 5, 2022). Given Pettorini's instructions that Plaintiff should return to his cell, the John Doe correctional officer was presumably justified in relying on Pettorini's expertise as a medical professional. Without further specific allegations against what this John Doe officer purportedly knew regarding Plaintiff's condition at the time, this Court does not find Plaintiff has sufficiently alleged deliberate indifference on the part of this John Doe correctional officer. Accordingly, Plaintiff's SAC against the John Doe(s) Defendant(s) shall be dismissed without prejudice at screening for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's attempt to seek *in forma pauperis* status is denied without prejudice. Plaintiff's motion for the appointment of *pro bono* counsel is denied without prejudice. Plaintiff's claims against Defendants Pettorini and Jackson shall proceed past screening. Plaintiff's SAC shall not be permitted to proceed against Defendants Camarllio, Collier and John Doe(s) as Plaintiff has failed to state a claim upon which relief may be granted against these three Defendants. An appropriate order shall be entered.

DATED: January 18th, 2023

GEORGETTE CASTNER
United States District Judge